RECEIVED
IN LAKE CHARLES, LA
SEP -6 2013
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION d/b/a LAKE CHARLES MEMORIAL HOSPITAL | : | DOCKET NO. 2:10-CV-902 |
| VS. | : | JUDGE MINALDI |
| BASF CONSTRUCTION CHEMICALS, LLC | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the court is a Motion to Alter or Amend Judgment [Doc. 63], filed by the defendant, BASF Construction Chemicals, LLC ("BASF"). The plaintiff, Southwest Louisiana Hospital Association ("the Hospital") filed an opposition [Doc. 67]. For the foregoing reasons, BASF's motion is GRANTED. The previous Memorandum Ruling [Doc. 62] and accompanying Judgment [Doc. 60] are amended as reflected in this Memorandum Order.

## PROCEDURAL BACKGROUND

As the undersigned summarized the relevant factual background in the preceding ruling on the parties' cross summary judgment motions, the entire fact pattern will not be repeated here. Briefly, this case arises out of the installation of a defective architectural wall system, known as Exterior Insulation Finish System ("EIFS"),[1] at the Hospital's facility on Nelson Road in Lake Charles, Louisiana.

In the court's previous ruling, the court made several findings, although only a few are relevant to the motion at bar. Addressing the Hospital's Partial Motion for Summary Judgment,

---

[1] As noted in the previous ruling, the EIFS was manufactured by a company called Finestone. BASF was the successor-manufacturer of the product via a merger on April 1, 2010, and thus appears as the named defendant in this case.

1

the court first found that BASF's attempt to limit remedies and waive implied warranties was ineffective because BASF could not satisfy the third prong of the waiver of warranties/remedies test (whether the waivers and limitations found in the Limited Warranty were pointed out and explained to the Hospital) found in the seminal Louisiana Supreme Court case, *Prince v. Paretti Pontiac Company*, 281 So.2d 112 (La. 1973).[2] Relying on this finding, the court next affirmatively found that there was no "meeting of the minds" on waivers and limitations;[3] that Finestone had waived warranty limitations based on its conduct in agreeing to remediate;[4] and, that, since it had found the Limited Warranty unenforceable, it was unnecessary to discern whether any potential ambiguities within the Limited Warranty should be construed in favor of the Hospital.[5] In sum, the court granted the Hospital's motion in its entirety.[6]

Turning to BASF's Motion for Summary Judgment, the court found that it could not dismiss the Hospital's article 2520 breach of warranty against redhibitory defects claim ("redhibition claim") based on prescription, as there was evidence that BASF continued to offer repairs, thus pausing the prescriptive period.[7] Additionally, finding persuasive the reasoning in the Western District of Louisiana case, *Justiss Oil Co., Inc. v. T3 Energy Servs., Inc.*, No. 1:07-cv-017452011 WL 539135 (W.D. La., Feb. 7, 2011), the court found that the Hospital could also assert an article 2524 claim ("breach of warranty that the thing is fit for ordinary use") for two reasons: (1) a redhibition claim under article 2520 and an article 2524 claim were not mutually

---

[2] Mem. Ruling, [Doc. 62], at pp. 14-22 (Section I(A)(1)).

[3] *Id.* at pp. 23-24 (Section I(A)(2)).

[4] *Id.* at pp. 25-27 (Section I(A)(3)).

[5] *Id.* at p. 27 (Section I(B)).

[6] *See id.* at pp. 14-27; *see also* Judgment, [Doc. 60].

[7] *Id.* at p. 36-42 (Section II(B)(2)).

exclusive, and (2) because the court had found that the shorter redhibition prescription period had not passed, the Hospital was free to assert both redhibition and article 2524 claims.[8] Thus, the court denied BASF's motion in its entirety.[9]

BASF now moves to alter or amend this court's ruling on the cross motions for summary judgment, requesting clarification on the portions of the opinion discussed immediately above, as well as clarification on the Judgment which accompanied the summary judgment Memorandum Ruling.[10]

## MOTION TO ALTER OR AMEND JUDGMENT UNDER RULE 54(b)

At the outset, the undersigned notes that BASF has erroneously moved under Rule 59(e) to alter or amend this court's previous ruling. While Rule 59(e) allows a party to alter or amend a judgment, this rule pertains specifically to *final* judgments. In this case, the court's ruling on

---

[8] *Id.* at pp. 42-46 (Section II(C)(1)(a)).

[9] *See id.* at pp. 27-51; *see also* Judgment.

[10] The court notes that BASF does not address nor contest the court's findings in the following sections of the opinion:

1. The court's finding, as a matter of law, that "redhibition does not require a direct buyer/seller relationship." *Id.* at pp. 28-31 (Section II(A)(1)).

2. The court's factual finding that "the rust on EIFS was a redhibitory hidden defect." *Id.* at pp. 31-34 (Section II(A)(2)).

3. The court's finding, as a matter of law, that claims under "the LPLA and negligence are irrelevant to the Hospital's cause of action." *Id.* at pp. 35-36 (Section II(B)(1)).

4. The court's finding, as a matter of law, that "article 2524 does not require a buyer/seller relationship." *Id.* at p. 47(Section II(C)(1)(b)).

5. The court's finding, as a matter of law, that "the LPLA is irrelevant to this cause of action, and thus has no effect on the art. 2524 claim." *Id.* at pp. 47-48 (Section II(C)(2)).

6. The court's denial of BASF's request that it affirmatively find that the "Hospital waived its rights under the warranty because it failed to assert them within the thirty-day time window" and the court's assertion that it was "premature" to grant summary judgment "on the issue of whether BASF is liable for the problems with the Utility building." *Id.* at pp. 48-50 (Section II(D)).

7. The court's denial of BASF's request that it had a "right to pick between [the] two options in [the] written warranty." *Id.* at p. 50 (Section II(E)).

3

the cross motions for summary judgment was not the final judgment of the court, and thus BASF's motion is more properly analyzed under Rule 54(b), which provides that

> [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision *is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*

FED. R. CIV. P. 54(b) (emphasis added).

Addressing a similar procedural situation, Judge Brady of the Middle District of Louisiana stated that

> [d]istrict courts have considerable discretion in deciding whether to grant a motion to reconsider an interlocutory order. The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be a motion under Rule 59(e), which is in turn less exacting than the standards enunciated in Rule 60(b). Though less exacting, courts have looked to the kinds of consideration under those rules for guidance.

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F.Supp. 2d 471, 475 (M.D. La. 2002) (internal citations omitted).

Turning to the standard applicable to a Rule 59(e) motion, a district court has considerable discretion to grant or deny a Rule 59(e) motion for reconsideration or to alter or amend a judgment. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993). Notably, however, reconsideration "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citations omitted). It "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* Courts have granted Rule 59(e) motions for several reasons,

4

including: "(1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) manifest injustice would otherwise result; (4) there has been serious misconduct by counsel; and (5) an intervening change in controlling law alters the appropriate outcome." *Livingston Downs*, 259 F.Supp. 2d at 475–76 (citing cases). Indeed, Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478–79.

The applicable standard for a Rule 60(b) motion is even stricter than that used in a Rule 59(e) motion. In order to succeed on a Rule 60(b) motion, the movant must show:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Rule 60(b) is used to "correct obvious errors or injustices." *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977). A party requesting relief under Rule 60(b) must show "unusual or unique circumstances" in order to prevail. *Id.; Pryor v. U.S. Postal Service*, 769 F.2d 281, 286 (5th Cir.1985).

## LAW AND ANALYSIS

### I. The Redhibition Claim under Article 2520 and Prescription

BASF first requests reconsideration of the court's decision regarding the prescription of the Hospital's breach of warranty against redhibitory defects claim under La. Civ. Code art. 2520 – as noted above, the court previously denied summary judgment on BASF's argument that the

5

Hospital's redhibition claim had prescribed. BASF asserts that the court found that there were unresolved fact issues that warranted denial of BASF's prescription argument, but that this conflicted with other sections of the opinion, which seemed to affirmatively state that the redhibition claim had *not* prescribed. Essentially, BASF requests that the court amend its opinion to reflect that the issue of prescription on the redhibition claim should be preserved for the jury. BASF also argues that the court could not issue a ruling finding that the redhibition claim had *not* prescribed, because the Hospital had not affirmatively asked for such a ruling in its own Motion for Summary Judgment.

The Hospital counters by noting that there were no genuine disputes of material fact on the sequence of events leading up to the Hospital filing its lawsuit, and that the court thus properly found, as a matter of law and discerning the "legal effect" of the uncontested sequence of events, that the redhibition claim had not prescribed. The Hospital further notes that because, in its own Partial Motion for Summary Judgment, it requested a judgment declaring that the Hospital "may seek relief from BASF for the defective EIFS under . . . implied warranties including the warranty against redhibitory defects (redhibition)," this indicates that the Hospital *was* requesting a ruling that the redhibition claim had not prescribed.

The court finds that BASF's request for clarification well-founded. Construing the evidence in the light most favorable to the Hospital, a genuine factual dispute remains as to whether the various offers to "pick and clean" continued to pause the prescriptive period; this is because a factual question remains as to whether it was reasonable for the Hospital to believe that remediation would continue after the correspondence exchanged between the parties in mid-2008. As expressed in the original opinion, the "'last date of repairs' rule must be tempered by another rule from Louisiana jurisprudence that 'interruption of prescription will occur when there

has been verbal or written communication which would *reasonably lead a buyer to believe that the defects complained of would be remedied.*'" Mem. Ruling [Doc. 62], at 40. Indeed, while the evidence shows there appeared to be a stalemate between the parties on the pick and clean issue in May 2008, a BASF representative nonetheless sent a letter again offering to pick and clean two of the Hospital buildings in June 2008, to which the Hospital responded with a letter agreeing to a "sample" pick and clean in August 2008. While there was a lapse in time between this final letter and the Hospital filing suit in April 2010, the Hospital presented evidence that such lag times were expected, based on prior interactions between the parties.

Thus, the court's original decision to deny summary judgment based on prescription was correct. To the extent the court's original opinion may be construed as having made affirmative statements that the redhibition claim certainly had *not* prescribed, however, these conclusions were premature and are thus stricken from the original opinion. A jury must be presented with witnesses and evidence from both sides, and assess for themselves when the remediation window closed and whether it was reasonable (based on the sequence of events and the working relationship BASF had with the Hospital) for the Hospital to believe that remediation would continue, thus pausing the prescriptive period. *Cf. Moore v. A.G. Edwards & Sons, Inc.*, 631 F.Supp. 138 (E.D. La. 1986) (denying summary judgment on a defendant's prescription argument because fact issues remained on whether a plaintiff knew or should have known of fraud, thus triggering the prescriptive period). Accordingly, to the extent that BASF requests clarification and amendment of the prior Memorandum Ruling on this issue,

**IT IS ORDERED** that Section II(B)(2) of the previous Memorandum Ruling [Doc. 62] is **AMENDED** to reflect that, while denial of BASF's summary judgment prescription argument

on the redhibition claim was appropriate, any affirmative statements made by the court that the redhibition claim had definitely not prescribed must be **STRICKEN**.

## II. Article 2524 Claim

Relying on its argument that the court found that the redhibition claim should be preserved for the jury, BASF also argues that the court should amend its ruling to reflect that it denied BASF's summary judgment motion on the validity of the Hospital's article 2524 claim in part because of fact issues remaining with the redhibition prescription issue. As noted above, the court relied on the Western District of Louisiana *Justiss* case as persuasive in guiding its inquiry as to whether a redhibition action and article 2524 action are mutually exclusive. This court agreed with the *Justiss* court's decision that the Louisiana Third Circuit case, *Cunard Line Limited Co. v. Datrex, Inc.*, 05-1171 (La. App. 3 Cir. 4/5/06); 926 So. 2d 109, which has been argued as standing for the proposition that an article 2520 claim is mutually exclusive from an article 2524 claim, was contrary to the conclusions reached by the "overwhelming majority of Louisiana appellate courts." *Justiss*, 2011 WL 539135 at *5. The *Justiss* court distinguished itself from *Cunard* in part by explaining that the *Cunard* court was faced with two different prescriptive periods – in *Cunard*, the one-year redhibition period had clearly passed, whereas the ten-year article 2524 period had not. *Id.* In contrast, in *Justiss*, the court had earlier found that *neither* of the prescriptive periods had passed. *Id.* at *6. Thus, the *Justiss* plaintiffs were free to claim relief under both theories of recovery. *Id.* ("Louisiana law has long held that, absent conflicting prescriptive periods, a plaintiff may assert claims under both theories and is not required to plead a single theory of his case.") (citation omitted).

Upon careful consideration of the case law, it seems that the proper issue herein is not whether a warranty of redhibition claim can coexist in a suit with a warranty of fitness claim, but

rather whether a warranty of fitness claim exists here at all. In this case, as already stated, the court cannot definitively declare whether the redhibition claim has prescribed or not, as unresolved issues of fact remain. As for the article 2524 claim: as noted by the *Cunard* court, article 2524 was added to the Louisiana Civil Code by La. Acts No. 841, § 1, effective January 1, 1995. *Cunard*, 926 So. 2d at 113. Revision Comment (a) to article 2524 provides, in full:

> This Article is new. It does not change the law, however. It gives express formulation to the seller's obligation of delivering to the buyer a thing that is reasonably fit for its ordinary use. The Louisiana jurisprudence has recognized the existence of that obligation although, in most instances, it has been confused with the warranty against redhibitory vices. *See Crawford v. Abbott Automobile Co., Ltd.*, 157 La. 59, 101 So. 871 (1924); *Jackson v. Breard Motor Co., Inc.*, 167 La. 857, 120 So. 478 (1929); *Falk v. Luke Motor Co., Inc.*, 237 La. 982, 112 So.2d 683 (La.1959); *Radalec Incorporated v. Automatic Firing Corporation*, 228 La. 116, 81 So.2d 830 (La.1955); *Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc.*, 262 La. 80, 262 So.2d 377 (La.1972).

The Revision Comments indicate that the previous caselaw erroneously confused a breach of warranty that the thing is fit for ordinary use with a breach of warranty against redhibitory defects. As the *Cunard* court discovered, it is not always a simple matter to distinguish a redhibition claim from a fitness claim.

Further, the *Cunard* court provides additional persuasive justifications for differentiating between a redhibition action and an article 2524 action, which bear repeating here:

> Revision Comment (b) to La.Civ.Code art. 2524 provides: "Under this Article when the thing sold is not fit for its ordinary use, even though it is free from redhibitory defects, the buyer may seek dissolution of the sale and damages, or just damages, under the general rules of conventional obligations. The buyer's action in such a case is one for breach of contract and not the action arising from the warranty against redhibitory defects." (Emphasis added.)

> It is apparent that the legislature intended by Act 841 to address and clarify any confusion between the warranty against redhibitory defects and the warranty of fitness for ordinary use and/or for a particular use or purpose by enacting La.Civ.Code art. 2524 as a separate and distinct Article from La.Civ.Code art. 2520. It would appear superfluous or redundant for the

9

> legislature to have enacted two warranty statutes addressing the same subject matter, with no mention or indication of its reasoning for the overlap, such as to provide for an election of remedies and prescriptive periods. In fact, Act 841 additionally enacted La.Civ.Code art. 2529, which provides: "When the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations." Thus, it appears that the legislature intended to separate and categorize three different types of warranties applicable to sales rather than to have all such warranties defaulted into the category of the warranty against redhibitory defects. Accordingly, we conclude that La.Civ.Code art. 2524 applies to a situation in which the cause of action is based, not on the defective nature of the thing at issue, but on its fitness for ordinary use and/or for a particular use or purpose.

*Cunard*, 926 So. 2d at 113.

Applying this reasoning to its facts, the *Cunard* court found that a buyer's claim that a seller had sold it lighting systems which "shorted out" was "based on the allegedly defective nature of [the lighting] systems," and not instead based on the theory that the lighting systems were not fit for their ordinary use as a lighting system for the buyer's cruise ship. *Id.* at 113–14. While, of course, the defective lighting systems were no longer useful for their ordinary purpose – lighting the buyer's cruise ship – the reason *arose from the redhibitory defect itself.* See id. Accordingly, the *Cunard* court found the buyer-plaintiff's claims for relief arose from article 2520, not article 2524, thus meaning that the plaintiff was relegated to the comparatively shorter one-year prescriptive period for article 2520 claims. However, that conclusion is not to say that the article 2520 claims are necessarily *mutually exclusive* from article 2524 claims; it is only to say that they are "separate and distinct" causes of action which may be present in an action either collectively or individually. The crucial consideration is what type of issue a buyer has with a product in determining whether the warranty of redhibition or the warranty of fitness applies.

It is possible to imagine, for instance, a situation in which a seller knew of a buyer's intended use of a product, and a product which was unfit for that use and also contained a

10

redhibitory defect was sold to a purchaser. Allowing a plaintiff in such a situation to bring an action under both theories of recovery would not seem to run afoul of *Cunard*.

The *Cunard* court stated that the "issue before [it was] whether La. Civ. Code art. 2524 is intended to *encompass* the warranty against redhibitory defects so as to provide an additional cause of action for *defective* products." *Cunard*, 926 So.2d at 113 (emphasis added). Thus, the question in *Cunard* was whether these actions were separate and distinct, as opposed to overlapping, not whether they were necessarily mutually exclusive.

With these principles in mind, the undersigned returns to the language of articles 2520 and 2524. Under article 2520, a redhibitory defect in a product is defined as something that "renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect" or else "without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." La. Civ. Code art. 2520. Thus, to use a simple example, suppose a buyer purchases a new vehicle from a car dealership, and several days later, a defect in the car transmission causes the car to shift erratically. In such a situation, the Louisiana Supreme Court has found that this faulty transmission issue would constitute a redhibitory defect under article 2520. *See Prince*, 281 So. 2d at 115. Under article 2524, in contrast, a product is not fit for ordinary use "[w]hen the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it." La. Civ. Code art. 2524. Thus, to use an alternative simplified example, suppose a buyer tells a seller that he requires a vehicle with enough towing capacity to tow a large-sized trailer. The seller proclaims that he has just the vehicle for the task, but, when the buyer actually hitches the trailer to his newly-

purchased Mazda Miata, he is woefully disappointed to discover that, try as it might, the Miata cannot pull such a heavy load. While the Miata contains no hidden redhibitory defects, it is certainly unfit for the particular use the buyer intended it for, thus constituting a breach of warranty of fitness for ordinary use under article 2524 on the seller's part. Further, if the Miata then was found to suffer from a faulty transmission, the court can think of no compelling reason why the purchaser would not be able to bring an action under both articles 2520 and 2524. Such a conclusion would also be consistent with the *Justiss* court's holding that would allow both claims to co-exist in the same case, rejecting any alternative conclusion as an improper "interpretation of *Cunard*." *Justiss*, 2011 WL 539135 at *5. Nevertheless, such a determination is unnecessary to the adjudication of this case, as the court finds, after a thorough reexamination of the facts, that an article 2524 claim is not the appropriate vehicle for the plaintiff's recovery herein.

Applying these definitions to the facts at bar, while the inquiry is closer than the example above, the undersigned finds that the Hospital's claims sound in breach of warranty against redhibitory defects under article 2520 only, and not breach of warranty of fitness for ordinary use under article 2524. The Hospital's allegations center around the fact that, while they bought an EIFS that technically served its ordinary use as an exterior wall cladding system, the hidden redhibitory defect in the EIFS (iron pyrite particles) rendered the EIFS so "useless" or else "diminished in value" that the Hospital would not have bought it if it had known the EIFS would soon become spotted with rust. This is further supported by the court's uncontested earlier finding that the iron pyrite particles were a hidden redhibitory defect.[11] In sum, because the

---

[11] Mem. Ruling at pp. 31-34 (Section II(A)(2)).

court finds that the Hospital's claim sounds in redhibition rather than fitness, the Hospital does not have an actionable article 2524 claim. Accordingly,

**IT IS ORDERED** that the court's affirmative finding that the Hospital herein may assert an article 2524 claim in addition to its redhibition claim is **STRICKEN** from the original opinion, as the plaintiff may only submit a claim under article 2520 under a theory of a breach of the warranty against redhibitory defects.[12]

### III. Waivers and Limitations of Implied Warranties in the Limited Warranty

The court will next address BASF's argument that the court erroneously found that the waivers and limitations of implied warranties in the Limited Warranty were unenforceable, thus granting the portion of the Hospital's summary judgment motion on this issue. In finding that the waivers were unenforceable, the court's inquiry turned on whether BASF brought the waivers and limitations to Michael Pomarico's (the Hospital architect) attention and explained them (the third prong of the three-part *Prince* test). The court found that while there was some evidence that the "submittals" contained some of the limitations and waivers of warranties, these limitations and waivers differed from the ultimate Limited Warranty that issued. Like with the redhibition prescription argument, BASF argues that by making an affirmative finding that the waivers and limitations were not brought to Pomarico's attention, which would thus make the Limited Warranty unenforceable, the court improperly took this factual dispute away from the jury and in so doing made a factual determination that was inappropriate in a motion for summary judgment.

The Hospital counters that the court, construing the uncontested submittals evidence, properly found that it was unnecessary for a jury to determine Pomarico's possible knowledge, in

---

[12] As the court has reversed its finding that the Hospital has a viable article 2524 claim, the findings in the other sections of the court's previous ruling [Doc. 62] discussing article 2524 (Sections II(C)(1)(b) and II(C)(2)) are now moot.

light of the lack of evidence on whether BASF brought the waivers and limitations to either Pomarico's attention or else another Hospital representative's attention. The Hospital further argues that BASF bore the burden of proof on proving the validity of waivers and remedy limitations, and that the court properly found that BASF could not satisfy this burden.

The court finds BASF's arguments well-founded. It was premature for the court to affirmatively find that the waivers and remedies were definitively unenforceable and grant summary judgment in favor of the Hospital. Factual disputes remain on this issue – a jury must assess for themselves, by analyzing the evidence contained in the submittals and the live testimony of Pomarico and the various other Hospital and BASF parties who participated in the facility construction process, whether and to what extent the Hospital knew that remedies would be limited and warranties would be waived as they were in the final Limited Warranty. Indeed, as pointed out by BASF, the primary opinion that the court relied on to find that the waivers and limitations were unenforceable, *Gulf South Mach., Inc. v. Kearney & Trecker Corp.*, 756 F.2d 377 (5th Cir. 1985) was the result of a jury trial, not a summary judgment motion.

The court notes that, as other portions of its decision on the Hospital's motion relied on the reasoning and findings from the section that discusses the *Prince* test (Section I(A)(2) titled "Meeting of the minds" on waivers and limitations, and Section I(B), titled "Construing Ambiguity in the Warranty"), these portions of the Hospital's motion similarly should have been denied.

Additionally, the court addresses the remaining section of its original opinion challenged by BASF, Section I(A)(3) ("Waiver of warranty limitations through Finestone's conduct in agreeing to remediate"). The court found that BASF's actions, in offering to remediate again and again, meant that BASF had waived its right to assert that the Hospital was relegated to a

refund of the purchase price or replacement of the product. The court's analysis turned in large part on the reasoning found in a Louisiana Second Circuit case, *Sabbath v. Martin*, 2009 WL 3449096 (La. App. 2 Cir. 10/28/09). In *Sabbath*, the Louisiana Second Circuit affirmed a trial court's ruling that a car dealer's repeated offers to fix a faulty car constituted a waiver on the dealer's part of the waiver of warranty clause found in the car's bill of sale. Importantly, the trial court entered this judgment after a "trial on the merits," after assessing evidence on "two disputed facts... (i) [the plaintiff's] understanding of any waiver of warranty and (ii) [the plaintiff's] consent to allow the final repairs to the vehicle to be performed at her costs." The court finds that it was premature to affirmatively find BASF, by offering to remediate on several occasions, definitively waived its right to assert the waivers of warranties and limitations of remedies found within the Limited Warranty. Accordingly,

**IT IS ORDERED** that Section I(A)(1)(b) of the Memorandum Ruling [Doc. 62] is **AMENDED** to reflect that factual disputes remain as to whether BASF properly brought the warranty waivers and limitations of remedies in the Limited Warranty to the Hospital's attention, and thus the court's affirmative finding that the Limited Warranty waivers and limitations are unenforceable is **STRICKEN**;

**IT IS FURTHER ORDERED** that Section I(A)(2) is **AMENDED** to reflect that factual disputes remain as to whether there was a "meeting of the minds" between BASF and the Hospital on the warranty waivers and limitations of remedies contained in the Limited Warranty. Thus, the court's affirmative finding that there was no meeting of the minds is **STRICKEN**;

**IT IS FURTHER ORDERED** that Section I(A)(3) is **AMENDED** to reflect that factual disputes remain on whether BASF waived its Limited Warranty by continually offering to remediate instead of offering the limited remedies contained in the Limited Warranty. Thus, the

court's affirmative finding that BASF had waived the Limited Warranty limitations and waivers is **STRICKEN**;

**IT IS FURTHER ORDERED** that Section I(B) is **AMENDED** to reflect that, in light of the fact that a factual dispute remains on whether the Limited Warranty is enforceable, it is premature to discern whether and to what extent ambiguities in the Limited Warranty should be construed in favor of the Hospital.

### IV. The Judgment

Finally, the court turns to BASF's request for clarifications within the Judgment. In the original Judgment, the court granted the Hospital's motion in its entirety, and denied BASF's motion in its entirety. In light of this opinion, the court reaffirms its decision to deny summary judgment on BASF's prescription argument, but reverses its decision to deny summary judgment on BASF's article 2524 argument. Accordingly,

**IT IS ORDERED** that the Judgment [Doc. 60] is **AMENDED** to reflect that BASF's Motion for Summary Judgment [Doc. 41] is **GRANTED** to the limited extent that the court agrees, as a matter of law, that the Hospital does not have a viable article 2524 claim, but otherwise remains **DENIED** as to all other claims raised in the motion.

As for the Hospital's Partial Motion for Summary Judgment, as noted *supra*, the court agrees that factual disputes remain as to whether the Hospital had notice of the waivers of warranties and limitations of remedies which appeared in the final Limited Warranty. The court also finds that it was premature to affirmatively find that BASF had waived its right to assert the limited remedies and waivers of warranties found in the Limited Warranty. Accordingly,

**IT IS ORDERED** that the Judgment [Doc. 60] is **AMENDED** to reflect that the Hospital's Partial Motion for Summary Judgment [Doc. 40] is **DENIED** as premature as to all claims.

Lake Charles, Louisiana, this 6 day of Sept 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE