RECEIVED
IN LAKE CHARLES, LA

MAY 30 2014

TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION D/B/A LAKE CHARLES MEMORIAL HOSPITAL | * * * * | CIVIL ACTION NO. 2:10-CV-902 |
| Plaintiff | * * | |
| V. | * * | JUDGE MINALDI |
| BASF CONSTRUCTION CHEMICALS, L.L.C. | * * * | |
| Defendant | * * | MAGISTRATE JUDGE KAY |

*******************************************************************

## MEMORANDUM RULING

Before the court is a Motion *In Limine* and/or *Daubert* Challenges [Doc. 69], filed by the defendant, BASF Construction Chemicals, L.L.C. (BASF), to which the plaintiff, Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital (the Hospital), has filed an Opposition [Doc. 78]. For the following reasons, the Motion [Doc. 69] is hereby **GRANTED IN PART**, and **DENIED IN PART**.

## LAW & ANALYSIS

As the facts and procedural history forming the basis of this action have already been set forth in detail by the court,[1] they are hereby incorporated by reference, and shall not be fully repeated herein. Essentially, this controversy stems from BASF's predecessor's (Finestone) manufacture of an Exterior Insulation Finish System (EIFS) that was used to complete the construction of the outer walls of facilities owned by the Hospital.[2] The EIFS system contained

---

[1] *See* Memo. Ruling [Doc. 59], at 1-7; Memo. Order [Doc. 81], at 1-3.
[2] *See* Memo. Ruling [Doc. 59], at 1.

1

iron pyrite particles that began to noticeably rust in December, 2002, shortly before the project's completion.[3]

BASF proposed a "pick and clean" solution, which involved the physical removal of the individual rusted iron particles from the wall, followed by cleaning with a solution.[4] This strategy was employed several times between 2003 and 2008 with varying degrees of success; however, the rust issue appears to have proven to be recurrent in nature.[5]

The remaining claims herein focus primarily on the Hospital's action in redhibition and several related issues, including a lingering dispute over the appropriate measure of damages.[6] BASF filed the instant Motion [Doc. 69] seeking an order from the court excluding any reference to, or discussion of, BASF claim files; excluding any reference by the plaintiff's expert, Childress Engineering Services, or Joel Scott (collectively, Childress), to "extensive," "heavy," "moderate," or "light" rust staining on the subject building; excluding Childress' testimony, report and trial graphics employing the aforementioned "extensive" to "light" rust staining methodology; excluding any testimony by Childress which states that the "pick and clean" method will not eliminate the rust staining on the EIFS; and excluding any expert opinion testimony by architect Michael Pomarico.[7]

### 1. The BASF Claim Files

BASF argues that the Hospital may attempt to introduce portions of BASF files—which document claims made against BASF by third parties—in order to present BASF in a negative light and thereby imply dishonesty or a lack of candor or good faith in dealings with customers

---

[3] *Id.* at 3.
[4] *Id.* at 4.
[5] *Id.* at 4-6.
[6] *See generally* Memo. Order [Doc. 81]. *See also* J. [Doc. 82].
[7] Mot. in Limine [Doc. 69], at 1-2.

2

on the part of BASF.[8] BASF cites to the Hospital's prior statement to the effect that BASF "intentionally mis[led] a customer in a similar position as [the Hospital]" as evidence of this intention.[9]

Evidence is relevant where it has a tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. FED. R. EVID. 401. Evidence that lacks relevance is inadmissible. FED. R. EVID. 402. Relevant evidence may nevertheless be excluded if its probative value is "substantially outweighed" by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

BASF argues that the claim files may not be introduced for the purpose of arguing that BASF misled the Hospital because the Hospital has not advanced any claim—such as, for instance, fraud—such that BASF's alleged "misleading" in this regard would be relevant.[10] *See* LA. CIV. CODE ANN. art. 1953 (1985). In this, BASF is correct. The introduction of information contained in the claim files for the purpose of attempting to show that BASF intentionally deceived other customers is not relevant to any of the claims asserted by the Hospital herein. Nevertheless, information pertaining to other customers' efforts at remedying similar rust issues with their EIFS may inform the assessment of possible damages, as well as the likelihood that further rounds of "pick and clean" will be necessary in order to permanently remediate the Hospital's problems in this regard. Similarly, such information might be useful to ascertain the likely extent of rust damage to occur in the future. Therefore,

**IT IS ORDERED** that BASF's Motion [Doc. 69] is **GRANTED** insofar as it seeks to exclude the introduction into evidence of BASF claim files for the purpose of showing that

---

[8] *See generally* Memo. in Supp. [Doc. 69-1], at 3.
[9] *See id.* (*citing* Mot. for Summ. J. [Doc. 46]).
[10] *See* Memo. in Supp. [Doc. 69-1], at 3-4.

BASF intentionally misled customers. However, the Hospital may introduce information from BASF claim files for other purposes, if determined to be relevant by this court.

### 2. References to, and Depictions of, "Extensive," "Heavy," "Moderate," or "Light" Rust Staining by Childress

BASF next seeks to preclude Childress, the plaintiff's designated expert,[11] from characterizing the rust stains on individual panels of the EIFS as "extensive," "heavy," "moderate," or "light."[12] Childress produced two expert reports—one from 2010,[13] and another from 2012[14]—both of which contain numerous pictures of the rust stained EIFS. The reports employ a rust stain classification system, devised by Childress, for referring to a given panel's rust stain content.

Under this system, a sample circle, four feet in diameter, is selected on a given panel, in which the number of total rust stains is counted.[15]

> [R]ust stain frequency was reflected based on the quantity of rust contaminants observed in a nominal 2 foot radius:
>
> - Heavy Rust Stain Frequency – 5+ (plus) visible rust contaminants
> - Moderate Rust Stain Frequency – 3-4 visible rust contaminants
> - Light Rust Stain Frequency – 1-2 visible rust contaminants
> - OK – No Rust Staining Observed.[16]

BASF objects to this classification system as misleading, largely because under this system a panel that contains "heavy" rusting in a relatively small area, but is otherwise completely free of rust, would nonetheless be classified as "heavy."[17]

---

[11] See Memo. in Supp. [Doc. 69-1], at 4.
[12] Id.
[13] See generally Report of Field Observations, Childress Eng'g Services, Inc., July 20 & 21, Sept. 23, 2010 [Doc. 69-3].
[14] See generally Report of Field Observations, Childress Eng'g Services, Inc., Nov. 28, 2012 [Doc. 69-4].
[15] See, e.g., Report of Field Observations, Childress Eng'g Services, Inc., Nov. 28, 2012 [Doc. 69-4], at 64, Appendix A.
[16] Id.
[17] Memo. in Supp. [Doc. 69-1], at 5.

A trial judge is granted "considerable leeway" in assessing the reliability of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Federal Rule of Evidence 702 provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. "Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Moore v. Int'l Paint, L.L.C.*, 547 Fed. Appx. 513, 515 (5th Cir. 2013) (citation omitted).

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the Supreme Court set forth an "illustrative, but not exhaustive, list of factors" to be employed in assessing the reliability of expert testimony. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (*citing Daubert*, 509 U.S. at 593). Courts are instructed to consider

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (*quoting Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668-69 (5th Cir. 1999) (*citing Daubert*, 509 U.S. at 592-93)). "'General acceptance' is not a necessary precondition to the admissibility of scientific evidence[,]" but the Rules of Evidence do task the district judge with ensuring that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a

preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (citations omitted).

The Supreme Court in *Daubert* stated that "[s]cientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." *Daubert*, 509 U.S. at 593 (citations omitted). In the instant matter, the court is disinclined to categorize the rust stain classification scheme as "scientific methodology," given that it is simply an arbitrary reference scheme created by the plaintiff's expert, Childress, in order to effectively communicate the degree to which a particular panel of EIFS has rusted. Childress' expert acknowledged in his deposition that the standard in use was essentially created for the purpose of this individual project, and he could point to no other publication or institution which recognizes such a standard.[18] He further stated that the standard "was created to determine what [Childress] believed to be heavy, moderate, and light exposure of rust frequency of the EIFS surfaces on this project."[19]

While it is true that the terms selected ("heavy," "light," etc.) are arbitrary, it is equally true that any classification scheme designed to segregate panels with more rust stains from those with less, whether employing some other descriptive terms, or a numerical designation, would be equally arbitrary. BASF is no doubt displeased at the notion of a system that categorizes large swaths of the subject EIFS panels as "heavily" or "extensively" rusted. However, "[v]igorous

---

[18] *See* Depo. of Joel Scott, Mar. 7, 2013 [Doc. 69-2], at 13-14.
> Q: The characterization "extensive," is there some standard by which you looked at and determined that the rust contaminants on this project satisfied that standard and qualified as extensive?
> A: Well, I mean, just looking at it, it's—it looks horrendous. It's terrible. I wouldn't want anybody to—I know they didn't buy that. I know they aren't looking at that as something that desirable or that can be looked over. And so the standard was, I guess, from maybe a layman's standpoint of "Look at all of the rust."

*Id.*
[19] *See id.* at 55.

6

cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (*citing Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). BASF's counsel will have ample opportunity to cross-examine the plaintiff's expert witnesses and point out to the jury the inherent deficiencies and arbitrariness of the rust stain classification scheme, including the use of a small circular sampling area, as they have ably done herein in arguing the instant motion.[20] Given the ease with which the deficiencies of the classification system can be explained, as well as the need for a workable vocabulary capable of communicating the extent of the rust stains in question, it cannot be said that the prejudicial effect of permitting the classification system's admission into evidence *substantially* outweighs its probative value so as to render it inadmissible under Rule 403. Accordingly,

**IT IS ORDERED** that BASF's Motion [Doc. 69] is **DENIED** insofar as it seeks to exclude reference to, or depictions of, Childress' rust stain classification scheme, and also insofar as it seeks to exclude Childress' testimony, report, and trial graphics addressing the same.

### 3. Opinions Regarding the Efficacy of "Pick and Clean"

BASF next seeks to exclude any testimony offered by the Hospital's expert which claims either that the "pick and clean" technique will ultimately prove to be ineffective, or which claims that the total removal and replacement of the EIFS (stripping and re-cladding) is the most efficient method of eliminating the staining.[21] In support of this argument, BASF essentially argues that Childress has no facts upon which to base such conclusions, and that they have

---

[20] *See also Daubert*, 509 U.S. at 596 (cautioning against being "overly pessimistic about the capabilities of the jury").
[21] Memo. in Supp. [Doc. 69-1], at 8-10.

insufficiently tested the effectiveness of the "pick and clean" method.[22] Thus, BASF argues, "Childress' opinions are not grounded in accepted or validated scientific methodology."[23]

As previously stated, the essence of the scientific method is the testing of hypotheses. *Daubert*, 509 U.S. at 593 (citations omitted). The evidence submitted could reasonably support a finding that the "pick and clean" method has been utilized successfully in the short term, but has not succeeded as a long term solution to the hospital's problem. Moreover, Childress' reports undercut BASF's arguments insofar as BASF asserts that no other testing has been done to determine the effectiveness of the "pick and clean" method of rust remediation. The earlier of Childress' two submitted reports, for instance, notes that

> [t]he remedies of picking out and patching over the iron pyrite contaminants has not been effective. It is further indicated through the correspondence from F&W Architectural Product, Inc. and Robbins Contracting that similar coating applications on a couple of other smaller projects in the vicinity had the same rust contaminant problems. They too had been picked and patched to remediate. After a cursory visual observation of each site while at the LCMH [Lake Charles Memorial Hospital] observations, these projects also still show substantial signs of rust particle contamination.[24]

It is an accepted scientific principle that "[t]rained experts commonly extrapolate from existing data." *Johnson*, 685 F.3d at 460 (*quoting Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Such extrapolation must be reasonable and scientifically valid, and courts may reject theories "based on extrapolation when 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* at 460-61 (*citing Joiner*, 522 U.S. at 146). It seems reasonable and within the general tenets of the scientific method to deduce that, as the "pick and clean" method has failed to remediate similar rust issues at other area properties, and has thus far been unsuccessful in permanently remedying the Hospital's rust issues, one could arrive at the

---

[22] Memo. in Supp. [Doc. 69-1], at 9-10.
[23] *Id.* at 10.
[24] Report of Field Observations, Childress Eng'g Services, Inc., July 20 & 21, Sept. 23, 2010 [Doc. 69-3], at 3.

conclusion that such a solution would be unlikely to succeed at the instant property in the future. Childress' subsequent report further supports such a conclusion, wherein Childress states that "[r]ust contamination [at the Hospital's facility] has not been eliminated by the pick, clean or coat remedies applied by the Manufacturer or its representatives since the original installation."[25]

The foregoing demonstrates that evidence exists which could support a finding that the "pick and clean" technique has been "tested" on several projects, and there is a body of evidence from which one could make reasonable deductions as to the efficacy of the "pick and clean" process. Childress' opinions regarding the utility of the various remediation processes is based on observations at the facility in question over a period of years, and is informed by the experiences of other area businesses. BASF will have ample opportunity on cross-examination to attack Childress' conclusions. Accordingly,

**IT IS ORDERED** that BASF's Motion [Doc. 69] is **DENIED** insofar as it seeks to exclude Childress' expert opinion testimony as to the potential efficacy, or lack thereof, of employing the "pick and clean" remediation technique, the "pick, clean and coat" technique, or the "stripping and re-cladding" technique.

### 4. Michael Pomarico's Expert Status

BASF next seeks to have Michael Pomarico, designer and architect of the Hospital facility,[26] declared ineligible to give expert opinion testimony based on the fact that the Hospital has failed to timely submit either an expert report or a summary of testimony from Mr. Pomarico.[27] The Hospital does not directly dispute this in their Opposition.[28] The Hospital

---

[25] Report of Field Observations, Childress Eng'g Services, Inc., Nov. 28, 2012 [Doc. 69-4], at 3.
[26] *See* Opp. [Doc. 78], at 12.
[27] Memo. in Supp. [Doc. 69-1], at 10.
[28] Opp. [Doc. 78], at 13.

9

states that Mr. Pomarico "will testify as a fact witness for the matters presently before the Court."[29]

Rule 26 requires parties to disclose the identities of expert witnesses to the opposing parties. *See* FED. R. CIV. PRO. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report" containing a variety of pertinent pieces of information describing the qualifications and potential biases of the expert witness. *See generally* FED. R. CIV. PRO. 26(a)(2)(B). These disclosures must be made according to court order, and, absent such an order, "at least 90 days before the date set for trial," or, if used solely as rebuttal evidence, "within 30 days after the other party's disclosure." FED. R. CIV. PRO. 26(a)(2)(D)(i)-(ii).

While case law certainly exists setting forth the circumstances under which the exclusion of an expert is an appropriate sanction for failure to timely provide an expert report as required by Rule 26,[30] the Hospital's assertion that Mr. Pomarico is being called only as a fact witness renders such a discussion unnecessary. The Hospital should be cautioned, however, that Mr. Pomarico's testimony, as a non-expert witness, shall be constrained by Rules 602 and 701 of the Federal Rules of Evidence addressing testimony by lay witnesses. Accordingly,

**IT IS ORDERED** that BASF's Motion [Doc. 69] is hereby **GRANTED** insofar as it seeks to preclude the plaintiff's witness, Michael Pomarico, from giving expert opinion testimony, in accordance with the Hospital's decision not to submit an expert report in

---

[29] *Id.* at 12.
[30] See, ,e.g., *Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 204 F.R.D. 309, 310 (W.D. La. 2001), wherein the plaintiffs sought to exclude the expert testimony of one of the defendant's witnesses as a sanction levied pursuant to Rule 37 for the defendant's failure to timely submit an expert report as required under Rule 26(a)(2). *See also Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996) (setting forth four factors to be considered in determining whether a district court should exclude expert testimony as a sanction for violating a discovery order). *See also* FED. R. CIV. PRO. 26(a)(2); FED. R. CIV. PRO. 37(c)(1).

connection with Mr. Pomarico's testimony, as well as the Hospital's assertion that Mr. Pomarico is being called to testify as a fact witness only.

Lake Charles, Louisiana, this 27 day of _____ Minaldi _____, 2014.

_____
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

11