RECEIVED
IN LAKE CHARLES, LA.

OCT - 2 2014

TONY R. MOORE, CLERK
BY _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SOUTHWEST LOUISIANA HOSPITAL | * | CIVIL ACTION NO. 2:10-CV-902 |
| ASSOCIATION D/B/A LAKE CHARLES | * | |
| MEMORIAL HOSPITAL | * | |
| | * | |
| **Plaintiff** | * | |
| | * | **JUDGE MINALDI** |
| V. | * | |
| | * | |
| BASF CONSTRUCTION CHEMICALS, | * | |
| L.L.C. | * | |
| | * | **MAGISTRATE JUDGE KAY** |
| **Defendant** | * | |

************************************************************************

## MEMORANDUM RULING

Before the court is Southwest Louisiana Hospital Association d/b/a Lake Charles

Memorial Hospital's (the Hospital) Motion to Strike [Doc. 119], seeking to strike portions of

BASF Construction Chemicals, L.L.C.'s, (BASF) Pretrial Statement [Doc. 111] and to preclude

BASF from presenting evidence on matters that the Hospital argues have already been decided

by the court and are no longer at issue in this case. BASF has filed an Opposition [Doc. 130], to

which the Hospital has filed a Reply [Doc. 136]. On June 10, 2013, the court granted the Motion

to Continue [Doc. 127] the trial setting of June 23, 2014,[1] and the Magistrate Judge subsequently

set a new trial date as well as a new deadline for pretrial statements. However, given that BASF

has not withdrawn its Pretrial Statement [Doc. 111], nor has the Hospital withdrawn its Motion

to Strike [Doc. 119], and upon a finding that to delay a ruling on these issues now would likely

only serve to prolong this matter and require the same issues raised in the Hospital's Motion

[Doc. 119] to be decided at a later time, the court finds that the Hospital's Motion [Doc. 19] is

---

[1] Electronic Order [Doc. 128].

1

ripe for review.  For the following reasons, the Hospital's Motion [Doc. 119] is hereby **GRANTED**, subject to the limitations and qualifications set forth herein.

## FACTS & PROCEDURAL HISTORY

As the facts in the instant case have already been thoroughly explicated by the court,[2] the court's prior recitations of fact are hereby adopted and shall not be repeated in full herein.  The instant case essentially stems from the installation of a defective architectural wall system, known as an Exterior Insulation Finish System (EIFS) on the outer walls of facilities owned by the Hospital.[3]  BASF is the successor-manufacturer of the EIFS via a 2010 merger with Finestone.[4]

The EIFS installation began in 2001, and, shortly thereafter, prior to the project's completion, iron pyrite particles present in the EIFS began to show signs of rust throughout.[5] Finestone delivered to the Hospital a ten year Limited Warranty in early 2003, the terms of which sought to waive the implied warranties of merchantability and the warranty of fitness for a particular use.[6]  It also limited the buyer's remedies to either a refund of the original purchase price or replacement of the applicable coatings component.[7]

Various attempts by BASF to "pick and clean" the rusted particles from the surface, which went on for several years, have not satisfied the Hospital.[8]  Communications began to break down after a fruitless May, 2008, meeting.[9]  In June, 2008, a Finestone representative sent a letter to the Hospital memorializing its most recent offer to pick and clean two of the three

---

[2] *See* Memo. Ruling [Doc. 62], at 1-7.  Memo. Order [Doc. 81], at 1-3.
[3] *See* Memo. Ruling [Doc. 62], at 2.
[4] *Id.*
[5] *Id.* at 3.  *See also id.* (discussing the EIFS Warranty).
[6] *Id.* at 3-4.
[7] *Id.* at 4.
[8] Memo. Ruling [Doc. 62], at 4-6.
[9] *Id.* at 6.

affected buildings.[10]  Michael Pomarico, one of the Hospital's architects, sent a letter to

Finestone on August 5, 2008, requesting a "sample" remediation procedure, although BASF

alleges that it never received this letter.[11]  Communication thereafter ceased; Finestone closed the

Hospital's file on August 19, 2009, and, on April 29, 2010, the Hospital filed suit.[12]

The court's Memorandum Ruling [Doc. 62] of May 29, 2013, disposed of the both the

Hospital's Partial Motion for Summary Judgment [Doc. 40] and BASF's Motion for Summary

Judgment [Doc. 41].[13]  The Hospital's Motion [Doc. 40] sought a declaration 1) that the remedy

limitations and waivers of implied warranties in the Limited Warranty were unenforceable, and

2) that even if the Limited Warranty was enforceable, that any ambiguity should be construed in

favor of the Hospital.[14]

The court relied on the three-part test set forth in *Prince v. Paretti Pontiac Company*, 281

So. 2d 112 (La. 1973), which states that a valid waiver of implied warranties must (1) be clear

and unambiguous; (2) must be contained in the sale documents; and (3) must be brought to the

buyer's attention.[15]  Applying the *Prince* test, and due to discrepancies between the various

warranty provision submittals that were brought to the attention of Mr. Pomarico and the

warranty language that ultimately appeared in the Limited Warranty, the court stated that

"[t]hese discrepancies advise against a finding that the exclusions of implied warranties and

limitations of remedies . . . are enforceable."[16]  Likewise, the court was unable to find that Mr.

Pomarico "tacitly approved of the limitations on remedies and exclusions of implied warranties

---

[10] *Id.* at 6.  *See also id.* at 5 (discussing BASF's position that Robbins Contracting's prior attempts to pick and clean the rust stains on the Utility building were improperly conducted, basically resulting in BASF's disclaiming of all responsibility for the rust on the Utility building).

[11] *Id.* at 6-7.

[12] *Id.* at 7.

[13] *See* Memo. Ruling [Doc. 62], at 1.

[14] *Id.* at 8.

[15] Memo. Ruling [Doc. 62], at 10-23.  *See also Gulf South Machine, Inc. v. Kearney & Trecker Corp.*, 756 F.2d 377, 380 (5th Cir. 1985) (*citing Prince*, 281 So. 2d 112) (addition citation omitted).

[16] Memo. Ruling [Doc. 62], at 18-23.

found in the final Limited Warranty."[17]  Further, addressing whether BASF had waived the warranty limitations through its conduct, the court stated that "BASF's liability cannot simply be limited to the purchase price of the finish coat, as BASF requests."[18]

In addressing BASF's Motion for Summary Judgment [Doc. 41], the court first found that the Hospital may pursue a claim in redhibition against BASF.[19]  In so doing, the court rejected BASF's argument that BASF should not be held liable for a claim in redhibition because BASF merely manufactured a "component part" of the EIFS.[20]  The court also found that the iron pyrite rust that the EIFS is exhibiting constitutes a redhibitory defect.[21]  Further, the court refused to dismiss the Hospital's redhibition claim on the basis of prescription, finding that it may be possible for one to interpret as reasonable the Hospital's belief that remediation would continue after the August, 2008, letter, thus pausing the prescriptive period.[22]

Further, as to the Hospital's claim for breach of the implied warranty of fitness for ordinary use under Civil Code article 2524, the court found that the Hospital had a valid article 2524 claim.[23]  It was further held that the Louisiana Products Liability Act (LPLA) was inapplicable.[24]  Lastly, addressing BASF's argument that the Hospital could not assert a claim for breach of the written EIFS warranty because 1) the Hospital had allegedly failed to comply with the warranty's terms by failing to notify BASF within thirty days of the rust stains, and 2) the Hospital had violated the warranty by permitting Robbins to use non-BASF products to fix

---

[17] Memo. Ruling [Doc. 62], at 24.
[18] Memo. Ruling [Doc. 62], at 27.
[19] Memo. Ruling [Doc. 62], at 30.
[20] *Id.* at 31 (*citing Pittman v. Kaiser Aluminum*, 559 So. 2d 879 (La. Ct. App. 1990)).
[21] *Id.* at 34.
[22] *Id.* at 42.  *See also* LA. CIV. CODE. ANN. art. 2534(C) (stating, "[i]n any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs").
[23] *Id.* at 42-47.  *See also* LA. CIV. CODE. ANN. art. 2524 (stating that a "thing sold must be reasonably fit for its ordinary use").
[24] Memo. Ruling [Doc. 62], at 47-48.

the rust on the Utility building, the court found that "the Hospital's failure to assert a breach of warranty within the thirty-day window prescribed by the Limited Warranty ha[d] no effect on the Hospital's claims, and that it [would have been] premature to grant summary judgment on whether BASF [was] liable for the damage to the Utility building."[25]

This ruling was followed by the Memorandum Order [Doc. 81] of September 6, 2013, granting BASF's Motion to Alter or Amend [Doc. 63], which sought both clarification and amendment of the court's aforementioned Memorandum Ruling [Doc. 62] and accompanying Judgment [Doc. 60].  In that Memorandum Order [Doc. 81], first addressing the issue of whether the Hospital's redhibition claim had prescribed, the court resolved to preserve for the jury the issue of "when the remediation window closed and whether it was reasonable (based on the sequence of events and the working relationship BASF had with the Hospital) for the Hospital to believe that remediation would continue, thus pausing the prescriptive period."[26]  Additionally, after a reconsideration of the parties' arguments, the court found that "the Hospital's claims sound in breach of warranty against redhibitory defects only, and *not* breach of warranty of fitness for ordinary use under article 2524."[27]  As to the effectiveness of the waivers and limitations of implied warranties in the Limited Warranty, the court clarified its previous ruling in stating that

> a jury must assess for themselves, by analyzing the evidence contained in the submittals and the live testimony of Pomarico and the various other Hospital and BASF parties who participated in the facility construction process, whether and to what extent the Hospital knew that remedies would be limited and warranties would be waived as they were in the final Limited Warranty.[28]

---

[25] *Id.* at 50.
[26] Memo. Order [Doc. 81], at 7.
[27] Memo. Order [Doc. 81], at 12 (emphasis added).
[28] Memo. Order [Doc. 81], at 14.

The court also noted that "it was premature to affirmatively find [that] BASF, by offering to remediate on several occasions, definitely waived its right to assert the waivers of warranties and limitations of remedies found within the Limited Warranty."[29]

On May 27, 2014, the Hospital and BASF filed pretrial statements and exhibit lists in preparation for a trial date of June 23, 2014.[30]  On June 2, 2014, the parties jointly moved to continue the trial date.[31]  This motion was denied on June 3, 2014.[32]  Another Motion for Continuance was filed on June 9, 2014, due to the resignation of one of BASF's two primary attorneys on this case.[33]  That motion was granted,[34] and a new trial was scheduled for February 23, 2015.[35]  On June 3, 2014, the Hospital filed a Motion to Strike [Doc. 119] portions of BASF's Pretrial Statement [Doc. 111].

## LAW & ANALYSIS

"Evidence is relevant if it has a tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401.  Evidence that is not relevant is not admissible. FED. R. EVID. 402.  Nevertheless, otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  While neither party has articulated a legal standard governing the court's determination of the Hospital's Motion to Strike [Doc. 119], given the language employed by the

---

[29] Id. at 15.
[30] See Electronic Scheduling Order [Doc. 91]. See also Hospital's Pretrial Statement [Doc. 109]; Hospital's Exhibit List [Doc. 110]; BASF's Pretrial Statement [Doc. 111]; BASF's Exhibit List [Doc. 112].
[31] See Joint Mot. for Continuance [Doc. 117].
[32] Electronic Order [Doc. 118].
[33] See Motion for Continuance [Doc. 127].
[34] See Electronic Order [Doc. 128].
[35] See Minutes of Scheduling Conference [Doc. 137].  The same Minutes also document the Magistrate Judge's order that "[a]ny party wishing to file any other motion must first seek leave of court." Id.

Hospital in its Motion [Doc. 119],[36] as well as the inapplicability of Federal Rule of Civil Procedure 12(f) to the instant matter,[37] the Hospital's Motion [Doc. 119] is perhaps most appropriately viewed through the lens of Rules 401, 402, and 403 of the Federal Rules of Evidence.

The Hospital's Motion to Strike [Doc. 119] seeks to strike several sections of BASF's Pretrial Statement [Doc. 111] as contradictory to prior rulings of the court. Each of the Hospital's contentions shall be addressed in turn.

The Hospital first argues that BASF should be prohibited from asserting either that the Hospital acquired ownership of the completed construction from Bessette, the general contractor, or that the certificate of substantial completion transferred ownership of the construction to the Hospital.[38] This request is in response to BASF's apparent attempt to re-litigate "[w]hether there was a hidden defect in the EIFS when [the Hospital] obtained ownership."[39] In opposition to the Hospital's Motion to Strike [Doc. 119], BASF states that it "agrees that legal issues underlying these facts were decided on the cross summary judgment motions."[40] BASF does, however, request the opportunity to proffer evidence on this issue outside the presence of the jury.[41]

The prior Memorandum Ruling [Doc. 62] of the court clearly found that the rusted iron pyrite particles constitute a redhibitory defect.[42] This finding was reaffirmed in the court's

---

[36] *See, e.g.* Memo. in Supp. [Doc. 119-1], at 3 ("Re-litigating this issue is improper and would only serve to prolong the trial and confuse the jury.").

[37] *See* FED. R. CIV. P. 12(f) (stating that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"). *See also Centex Homes v. Lexington Ins. Co.*, No. 3:13-cv-719-BN, 2014 U.S. Dist. LEXIS 38710, at *5 (N.D. Tex. Mar. 25, 2014) (citations omitted) (stating that Rule 12(f) applies only to pleadings as defined in Federal Rule of Civil Procedure 7(a)).

[38] Mot. to Strike [Doc. 119], at 1-2.

[39] BASF's Pretrial Statement [Doc. 111], at 16, 18.

[40] Opp. [Doc. 130], at 5.

[41] Opp. [Doc. 130], at 5.

[42] Memo. Ruling [Doc. 62], at 31-34.

subsequent ruling on BASF's Motion to Alter or Amend [Doc. 63].[43]  Finding no compelling

reason to reconsider this conclusion, the court is disinclined to permit BASF to continue to re-

urge this argument as it has already been fully briefed and ruled upon, and any additional

evidence or argument to be offered in this regard would have no relevance to the remaining

issues herein.  Accordingly,

      **IT IS ORDERED** that the Hospital's Motion [Doc. 119] is hereby **GRANTED** insofar

as it seeks to strike from BASF's Pretrial Statement [Doc. 111] any assertions or references to

either when the Hospital acquired ownership of the EIFS, or whether the EIFS constitutes a

redhibitory defect.

      The Hospital likewise seeks to strike any portions of BASF's Pretrial Statement [Doc.

111] that seek to re-urge the issue of whether a direct vendor/vendee relationship is required to

assert a claim in redhibition.[44]  The court's prior Memorandum Ruling [Doc. 62] clearly

addressed this issue, concluding that it was "clear that the Hospital may pursue a direct cause of

action under art. 2520 against the manufacturer, BASF."[45]  This conclusion was not disturbed in

the court's subsequent ruling.[46]  Accordingly,

      **IT IS ORDERED** that the Hospital's Motion [Doc. 119] is hereby **GRANTED** insofar

as it seeks to strike from BASF's Pretrial Statement [Doc. 111] any assertions that a redhibition

claim requires a vendor/vendee relationship.

      The Hospital next seeks to strike any portions of BASF's Pretrial Statement [Doc. 111]

that seek to present argument or evidence as to whether the EIFS may be characterized as a

---

[43] Memo. Ruling [Doc. 81], at 3, n.10.
[44] Mot. to Strike [Doc. 119], at 2.
[45] Memo. Ruling [Doc. 62], at 30.
[46] Memo. Ruling [Doc. 81], at 3, n.10.

component part of the Hospital buildings.[47]  The court's prior ruling clearly stated that "BASF's argument that it can escape a redhibition claim because it only manufactured a defective component part . . . fails."[48]  The court finds no reason to reconsider this conclusion. Accordingly,

**IT IS ORDERED** that the Hospital's Motion to Strike [Doc. 119] is hereby **GRANTED** insofar as it seeks to strike from BASF's Pretrial Statement [Doc. 111] any suggestion either that the EIFS is a component part of an immovable, or that the Hospital's redhibition claim fails if the EIFS is classified as a component part of an immovable.

The Hospital next seeks to strike from BASF's Pretrial Statement any assertions that the Hospital failed to report each new rust stain to BASF within thirty days of its appearance.[49]  The court has already stated that "[a] finding now that the Hospital waived its rights under the warranty because it failed to assert them within the thirty-day time window would essentially penalize the Hospital for allowing Finestone to continue to offer repairs."[50]  This finding was reaffirmed in the court's subsequent ruling.[51]  BASF, recognizing the court's prior orders, nevertheless asserts that evidence of the Hospital's allegedly delayed reporting of the appearance of new rust stains is relevant for additional reasons.[52]  For instance, BASF anticipates that the Hospital will attempt to characterize the rust stains as "severe," but BASF counters that the severity of the rust stains is at least in part due to the Hospital's delays in notifying BASF of the emergence of new stains.[53]

> [W]hen evidence is challenged solely on the ground that it is irrelevant, it is inadmissible only if it fails to meet the definition of Rule 401—it must be without

---

[47] Memo. in Supp. [Doc. 119-1], at 3-4.  *See also* BASF's Pretrial Statement [Doc. 111], at 15, 18.
[48] Memo. Ruling [Doc. 62], at 31.
[49] Memo. in Supp. [Doc. 119-1], at 4.
[50] Memo. Ruling [Doc. 62], at 49.
[51] Memo. Ruling [Doc. 81], at 3, n.10.
[52] Opp. [Doc. 130], at 13-16.
[53] Opp. [Doc. 130], at 15.

probative value as to any fact of consequence to the determination of the action. If it is relevant as to any issue, it is relevant to the action and is not inadmissible under Rule 402.

*Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 267 (5th Cir. 1980).

Finding merit to both parties' positions, BASF shall be permitted to present evidence regarding the respective timing of the emergence of new rust stains relative to the Hospital's reporting of those new stains to BASF. However, consistent with the prior rulings of the court, BASF shall not be permitted to introduce such evidence for the purpose of reasserting that the Hospital waived its rights under the Limited Warranty for failing to assert them within the thirty day window. Accordingly,

**IT IS ORDERED** that the Hospital's Motion to Strike [Doc. 119] is hereby **GRANTED** insofar as it seeks to strike from BASF's Pretrial Statement [Doc. 111] any assertions that the Hospital waived its rights under the Limited Warranty by failing to report new rust stains to BASF within thirty days. However, BASF may present evidence as to the timing in which the Hospital notified BASF of the development of new stains relative to the timing of the emergence of those stains, provided that such evidence is presented for other, relevant purposes.

The Hospital next seeks to strike from BASF's Pretrial Statement [Doc. 111] any arguments or defenses related to either negligence claims or claims under the Louisiana Products Liability Act (LPLA).[54] The court has already found that no claims exist herein under theories of either negligence or products liability.[55] Likewise, the Hospital does not appear to be asserting any such claims.[56] As such, any assertions, arguments, claims or defenses addressing nonexistent negligence claims or claims under the LPLA are inappropriate in the instant case. Accordingly,

---

[54] Memo. in Supp. [Doc. 119-1], at 4.
[55] Memo. Ruling [Doc. 62], at 35-36, 47-48.
[56] Memo. in Supp. [Doc. 119-1], at 4-5.

10

**IT IS ORDERED** that the Hospital's Motion to Strike [Doc. 119] is hereby **GRANTED** insofar as it seeks to strike from BASF's Pretrial Statement [Doc. 111] any assertions, arguments, claims or defenses addressing issues of negligence or products liability under the LPLA.

The Hospital further seeks to strike from BASF's Pretrial Statement [Doc. 111] any assertions implying that BASF was not obligated to follow the legal requirements for establishing a valid implied warranty waiver and remedy limitation.[57]  The court's September 6, 2013, Memorandum Ruling, addressing the applicability of *Prince v. Paretti Pontiac, Company*, 281 So. 2d 112 (La. 1973), amended the prior ruling of the court to "reflect that factual disputes remain as to whether BASF properly brought the warranty waivers and limitations of remedies in the Limited Warranty to the Hospital's attention."[58]  However, the court did not disturb its finding that the appropriate test for determining whether implied warranties have indeed been waived looks to whether the waiver was "(1) written in clear and unambiguous terms; (2) contained in the sales documents; and (3) brought to the attention of the buyer or explained to him."[59]

The Hospital reads BASF's Pretrial Statement as attempting to ignore the *Prince* elements and shift its obligation to comply with the law to subcontractors and other parties.[60]  BASF, on the other hand, characterizes the Hospital's request as an improper attempt to prevent the jury from assessing evidence regarding the submittal process as well as Pomarico's review of the Finestone submittal.[61]

---

[57] Memo. in Supp. [Doc. 119-1], at 5-6.
[58] Memo. Ruling [Doc. 81], at 15.
[59] Memo. Ruling [Doc. 81], at 10 (*citing Prince*, 281 So. 2d at 117).
[60] Memo. in Supp. [Doc. 119-1].
[61] Opp. [Doc. 130], at 12.

BASF is, of course, bound by the *Prince* factors and must show that the warranty waivers and limitations of remedies were brought to the Hospital's attention.  BASF is furthermore permitted to introduce evidence to show its attempts at complying with the requisites of *Prince*.  However, BASF shall not be permitted to submit evidence or argument asserting that compliance with "construction practices" somehow operates as a warranty waiver where a party has failed to comply with the requisites of *Prince* and its progeny. Accordingly,

**IT IS ORDERED** that the Hospital's Motion to Strike [Doc. 119] is hereby **GRANTED** insofar as it seeks to strike from BASF's Pretrial Statement [Doc. 111] any assertions that compliance with "construction practices" operated as a warranty waiver in lieu of compliance with the requirements of *Prince* and its progeny.  However, BASF shall be permitted to present evidence addressing both the submittal process and any efforts made to bring the waivers to the attention of the Hospital.

Lake Charles, Louisiana, this ___ day of _____, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE